UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA GUTIERREZ,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | Case No. CV 10-9690-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he ignored the opinion of the reviewing doctor and when he relied on the vocational expert's testimony that Plaintiff could work despite her limitations. (Joint Stip. at 5-6.) For the reasons explained below, the ALJ's decision is reversed and the case is remanded for further proceedings.

## II. SUMMARY OF PROCEEDINGS

In September 2008, Plaintiff applied for SSI and DIB, alleging, ultimately, that she was disabled due to diabetes, high blood pressure, back problems, depression, and pain. (Administrative Record ("AR") 89-106, 114, 148.) The Agency denied the applications initially and on reconsideration. (AR 51-59.) Plaintiff then requested and was granted a hearing before an ALJ. Plaintiff, who was not represented by counsel, testified at the hearing on January 22, 2010. (AR 18-46.) The ALJ subsequently issued a decision denying benefits. (AR 8-17.) Plaintiff appealed to the Appeals Council, which denied review. (AR 5-7.) She then commenced this action.

## III. DISCUSSION

### A. The ALJ's Reliance on the Vocational Expert's Testimony

The ALJ determined that Plaintiff was capable of performing light work but was moderately limited in her ability to maintain concentration and attention and could only use her left hand occasionally. (AR 14.) The ALJ accepted the vocational expert's testimony that, despite these limitations, Plaintiff could still perform her former jobs of sales clerk, accounting clerk, and credit card control clerk. (AR 16.) Plaintiff claims that the ALJ erred in doing so. She points out that the vocational expert never testified about the sales clerk position and that the ALJ never asked the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required under the regulations. (Joint Stip. at 5-6.)

The Agency concedes that the vocational expert never testified about the sales clerk position, but argues that the error was harmless because she did testify about the other two positions and that

testimony is enough to support the ALJ's finding that Plaintiff could work. (Joint Stip. at 7, n.3.) The harmless error analysis turns on the resolution of Plaintiff's other argument here, i.e., that the ALJ failed to ask the vocational expert about any apparent or actual conflicts between her testimony and the DOT. The Agency concedes that the ALJ erred here, too, when he failed to ask the vocational expert if her testimony was consistent with the DOT, but argues that any error was harmless because there was no inconsistency. (Joint Stip. at 7-8.) For the following reasons, the Court sides with the Agency.

The DOT is the presumptive source on the characteristics of jobs in the national economy. *See Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001). Nevertheless, it is not the sole source of this information and the Agency may rely on the testimony of a vocational expert for information on jobs. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). But, before relying on a vocational expert's testimony, an ALJ must inquire whether the testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); Social Security Ruling 00-4p. Failure to do so requires reversal unless the error was harmless, i.e., there was no actual or apparent conflict or the vocational expert provided sufficient support for her conclusion so as to explain away any conflicts. *Coleman v. Astrue*, 423 Fed. App'x 754, 756 (9th Cir. 2011); *Massachi*, 486 F.3d at 1154 n.19.

Though it is not clear from her brief, Plaintiff seems to argue that there is a conflict or an apparent conflict between the vocational expert's testimony that Plaintiff could work as an accounting clerk and the DOT description of this job. (Joint Stip. at 6.) Presumably, this conflict is between the "specific vocational

preparation," or SVP, of 5, which requires six months to one year of training, and Plaintiff's limitations in her ability to maintain concentration and attention. (Joint Stip. at 6.) Though not clear from the single sentence she devotes to this issue, she is, apparently, arguing that her mental limitations preclude her from learning how to perform this job.

Plaintiff, however, has not explained how it is that any limitations she suffers as a result of her mental impairment--which, arguably, would interfere with her efforts to master the duties of a job--would preclude her from performing a job that she already knows how to perform and, in fact, already has performed. Nothing in this record suggests that Plaintiff's impairment has caused her to lose the fountain of knowledge she had before she suffered her mental impairment. As such, this argument is rejected.

Plaintiff also argues that the vocational expert's testimony is inconsistent with the descriptions of the jobs of credit card control clerk and accounting clerk because they require frequent or constant reaching, handling, and fingering and Plaintiff can only occasionally use her left hand. (Joint Stip. at 6-7.) The Court does not find that there is any actual or potential conflict between the DOT and the vocational expert's testimony that Plaintiff could perform these jobs despite this limitation. The DOT job descriptions for these two jobs do not include a requirement for use of both hands. *See* DOT Nos. 216.482-010 (accounting clerk) and 249.367-026 (credit card control clerk). And, generally speaking, the requirement that an employee frequently use his hands to perform a job does not mean that he has to be able to use both hands. *See*, *e.g.*, *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (holding vocational expert's testimony that

claimant, whose left arm had been amputated, could perform work as cashier or ticket seller was *not* inconsistent with DOT requirement of occasional or frequent handling and fingering where DOT did not specifically require use of both hands).

    Plaintiff argues that the ALJ and, in turn, the Court, should rely on the *Revised Handbook for Analyzing Jobs*, which Plaintiff describes as a companion publication to the DOT.  (Joint Stip. at 5-6.)  In Plaintiff's view, this handbook supports her position that two hands are needed for the clerk positions identified by the ALJ.  The Court does not find the handbook binding on the Court or the ALJ, nor did Plaintiff cite any authority to suggest that it was.  Further, even if the ALJ had consulted it, the result of this case would not have been different because, as Plaintiff points out in her brief, the handbook defines "handling" as "working with hand or hands."  (Joint Stip. at 6, citing *Revised Handbook for Analyzing Jobs*, page 12-6.)

    Thus, because there was no actual or apparent conflict between the DOT and the vocational expert's testimony, the ALJ's error in not asking the vocational expert about any conflict was harmless.  For this reason, Plaintiff's first claim is denied.

    B.   <u>The ALJ's Treatment of Plaintiff's Mental Impairment</u>

    Plaintiff complains that the ALJ failed to properly consider the opinion of reviewing doctor P.M. Balson, who concluded, it seems, that Plaintiff was only capable of understanding and carrying out simple, one- and two-step instructions. (Joint Stip. at 12-14.)  The Agency disagrees.  It argues that the limitation to simple, one- and two-step instructions was proposed by a disability evaluation analyst, not Dr. Balson, and, therefore, was not relevant.  (Joint Stip. at 12-14.) For the following reasons, the Court finds that the ALJ erred here.

5

Plaintiff was examined and tested by psychiatrist David Bedrin, who ultimately concluded that she suffered from depression, which limited her to performing simple tasks. (AR 244-50.) In Dr. Bedrin's view, Plaintiff "may have some impairment in her ability to perform complex tasks secondary to concentration problems." (AR 249.)

Dr. Bedrin's opinion was reviewed by Dr. Balson, an Agency reviewing physician. (AR 252-65.) Dr. Balson set forth his or her opinion in two mostly check-the-box forms. (AR 252-65.) On the first page of the first form, entitled, "Psychiatric Review Technique," Dr. Balson's name is typed twice, once on a signature line and directly below it on a line requesting the signator to print his or her name. (AR 252.) Several boxes are checked on the first page, indicating the doctor's opinion regarding Plaintiff's condition. (AR 252.) Pages two through eight do not contain any check marks or writings. (AR 253-59.) Pages nine and ten of the form contain check marks, indicating the doctor's opinion regarding Plaintiff's limitations. (AR 260-61.) The eleventh and final page of the first form contains typed notes summarizing Plaintiff's complaints and her claim history with regard to her mental impairment. (AR 262.) This page also includes the following entry: "**COMPLETED BY GLENN RAMOS, DEA III." (AR 262.)

The second form, a "Mental Residual Functional Capacity Assessment," is three pages long. (AR 263-65.) The first two pages are statements with boxes that have been checked, indicating the author's opinion regarding Plaintiff's mental impairment. (AR 263-64.) The third page contains a "Functional Capacity Assessment" section, under which various notes are typed, including, "Able to understand, carry out, and remember simple one and two-step instructions" and "Able to make simple work-related judgments and

decisions." (AR 265.) Typed underneath these entries are the words "**COMPLETED BY GLENN RAMOS/DEA III." (AR 265.) Underneath that entry is the statement, "These findings complete the medical portion of the disability determination." (AR 265.) Underneath that statement is Dr. Balson's name typed in on the signature line.

Dr. Balson's name on the signature line below the entry by Mr. Ramos suggests to the Court that Dr. Balson endorsed the finding that Plaintiff was limited to simple, one- and two-step instructions. Assuming Plaintiff was so limited, she would not be able to perform the jobs of accounting clerk or credit card control clerk, as they involve reasoning level three and four, respectively, which is beyond simple, one- and two-step instructions. In fact, a limitation to simple, one- and two-step instructions is more akin to level one reasoning, which involves being able to:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See* DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702 (4th ed. rev. 1991); *see also Garcia v. Astrue*, 2011 WL 2173806, at *2 (C.D. Cal. June 1, 2011) (concluding restriction to work involving one- and two-part instructions precluded work involving Level 2 reasoning).

The Agency disagrees. It argues, it seems, that the Court should simply brush aside the limitation to simple, one- and two-step instructions as the musings of an untrained Agency disability evaluation analyst, whatever that is. (Joint Stip. at 15-16.) It argues that no doctor found that Plaintiff was limited to simple, one-

1 and two-step tasks.  This argument is rejected.  Dr. Balson's
2 signature under Mr. Ramos's entries signify that Dr. Balson was
3 accepting and endorsing these findings.  The Agency cannot sever that
4 portion of the opinion from the rest of the opinion or discount it
5 under the assumption that Dr. Balson must have ignored it or not seen
6 it.  The Court presumes a certain regularity with the medical records
7 presented in these cases and, thus, when a doctor signs off on a
8 medical form that may have been prepared at least in part by another
9 the Court presumes that the doctor read and understood the form and
10 that he or she meant to endorse all of it when he or she signed off on
11 it.
12     With that understanding, the Court concludes that the record
13 contains an opinion from a reviewing doctor that Plaintiff is limited
14 to simple, one- and two-step instructions, a limitation that is
15 incompatible with a finding that she can perform work at reasoning
16 level three and four.  The ALJ never addressed this conflict and
17 remand is, therefore, required.  *See* 20 C.F.R. § 416.927(f)(2)(i)-
18 (ii); and *Sawyer v. Astrue*, 303 Fed. App'x 453, 455 (9th Cir. 2008).
19      Plaintiff requests that Dr. Balson's opinion be credited as true
20 and that the Court remand the case to the Agency for an award of
21 benefits.  (Joint Stip. at 14, 19.)  Though the Court recognizes it
22 has the authority to do this, it declines to do so.  It is not clear
23 on this record that Plaintiff is entitled to benefits.  Further
24 proceedings are necessary to resolve this issue.  *See Vasquez v.*
25 *Astrue*, 547 F.3d 1101, 1106-07 (9th Cir. 2008) (noting that "credit-
26 as-true" rule should not apply if there are outstanding issues to be
27 resolved before a proper disability determination can be made),
28

*amended in other respects on denial of reh'g en banc,* 572 F.3d 586 (9th Cir. 2009).  For this reason, this request is denied.

## IV. CONCLUSION

For the foregoing reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: January 24, 2012

　　　　　　　　　　　　　　　  /s/ Patrick J. Walsh
　　　　　　　　　　　　　　　  PATRICK J. WALSH
　　　　　　　　　　　　　　　  UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\GUTIERREZ, M 9690\Memo opinion and order.wpd